FINK *vs.* LALLANDE ET AL.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

EASTERN DIST.
*December,* 1840.

FINK
*vs.*
LALLANDE ET AL.

16 L 547
48 1175

The sheriff may proceed to make further seizures under the same writ of *fieri facias,* if by the sale of the property first seized, it is insufficient to satisfy the writ.

The want of docketing a judgment does not prevent its being executed.

A scroll, with the letters L. S. written in it, will be a sufficient seal to a writ of *fieri facias,* when it does not appear the court had any other.

A sheriff's return is *prima facie* evidence of the legality of his acts; and it becomes the duty of the party attacking the validity of a sheriff's sale, to prove that the formalities required by law were not complied with.

If a levy be made, within or before the return day of the execution, the sheriff may proceed to sell afterwards, even after the return of the writ.

The appraisement is immaterial, in a sheriff's sale on twelve months' credit when the property must be sold for whatever it will bring.

Before the adoption of the constitution, a compliance with either the English or French text of the law was sufficient.

After a lapse of twenty years, the legal presumption is in favor of the sheriff's acts, and of the legality and validity of a sheriff's sale.

This is an action for slander of title and disturbance of possession of the plaintiff, as the owner and possessor of a city lot, by the defendant, who claims to be owner; exercising acts of ownership over it, by hauling earth and placing it thereon. He prays to be quieted in his title, and that the defendant be enjoined and prohibited from disturbing him in the possession thereof.

The defendant pleaded a general denial, and avers that he is the true owner of said lot, situated at the south west corner of Perdido and St. Paul streets, which he purchased of Jean Gravier's curator, the 21st July, 1836, by notarial act, and that he is the true and legal owner thereof. That the plaintiff's titles set up, under which he claims, are null and void, and can have no effect against third persons. Wherefore he prays that this suit be dismissed. He also prays that Gravier's curator be called in warranty.

Gravier's curator pleaded a general denial to the plaintiff's petition ; and averred that the sale to Lallande was valid and made in virtue of an order of the Court of Probates.   He further averred, that the plaintiffs titles were null, and the sales under which the property is claimed were not made in conformity with the provisions of law required in forced alienations.   He expressly denies that the plaintiff has ever been in possession ; but that on the contrary, Jean Gravier was in possession thereof up ' to the time of his death in October, 1834.   He prays that the suit be dismissed.

Upon those pleadings and issues the cause was tried.

The plaintiff claimed under a sheriff's sale made in 1814, under execution which issued on a judgment obtained by a certain Madam Rabasse against Jean Gravier.  The particulars and facts of this sale are specially and fully set forth in the opinion of the court.

There was judgment enjoining the defendant from committing disturbances of the plaintiff's possession, and that the plaintiff recover one dollar in damages, with costs ; the defendant to recover one dollar and costs from his warrantor, reserving to defendant and his warrantor the right to sue for a rescission of the sheriff's sale under which the plaintiff claims.   Gravier's curator, called in warranty, appealed.

G. and H. Strawbridge, for the plaintiff.   We claim the lot in dispute, under a sheriff's sale to one G. Wirtenbacken, in 1814.   The conveyances or chain of title, from him to the present plaintiff were not contested.

2. The sheriff's sale is valid.   We show a judgment, execution and regular sale under them, which is all that can be required at this day ; more than twenty years having elapsed.   It cannot be expected to reconcile supposed errors of dates, blunders and irregularities of sheriff's and clerks in the minutia of their proceedings in by-gone days, like other obligations and duties required of the present generation.

3. But our claim does not rest solely on the validity of the sheriff's sale or the requisites of a perfect title.   It rests on prescription, on a just title translative of property ; possession.

in good faith ; a sale valid in form ; title derived from the real owner, and held in good faith under the reasonable belief in its validity and justness. *Louisiana Code*, 3445, *et seq.*, 3450–1, 3447.

*L. Janin*, for the defendant and warrantor, relied on the following points in argument:

1. The plea of prescription cannot be made by the plaintiff. For if it were true, that he had such a possession as would prevent the defendant from claiming the property in a petitory action ; that the defendant was deprived of suing for the property ; still the defendant as such may oppose the nullity of the sale under which he is himself sued. *Quæ temporalia sunt ad agendem, perpetua sunt ad excipiendum.* 3 *Martin, N. S.*, 696 ; 1 *Idem.*, 468 ; 7 *Toullier*, 708.

2. The defendant being in possession, and showing an old possession under a good title, will be presumed to have possessed during the intermediate space of time.

3. He who claims under a title which is void, though he believed it to be good, will prescribe only by thirty years. *Part. 3, l. 29, t. 25, Gloss No. 3. Gregory Lopez.*

4. He who has held property for thirty years in good faith and is dispossessed of it, may recover it back from the possessor, unless this possessor be the true owner. *Part. 3, t. 19, l. 21. Part. 3, t. 29, l. 21.* The defendant was in possession and had filled up the ground.

5. Corporeal possession is necessary to prescriptions. *Part. 3, t. 30, l. 6* ; 7 *Martin, N. S.*, 122 ; 9 *Martin*, 45, 175, 170 ; 11 *Idem.*, 17.

6. A sheriff's sale, which describes the property so imperfectly that its locality cannot be ascertained without further inquiries, unaccompanied by any act of corporeal possession, is not a title on which prescription can be based. There is no room for constructive possession, when not even the recorded title conveys notice of what is claimed under it. With what strictness symbolic delivery is to be construed, appears from the case of *Copelly* vs. *Daverges*, 11 *Martin*, 641,

A defendant in execution is not a party to the sheriff's sale. *Delogny* vs. *Smith* ; 3 *Louisiana Reports*, 418. This consent to the alienation is supplied by certain formalities, by which alone he can be deprived of his property. Where these formalities are not complied with, the sale is similar to a private act, without the signature of the vendor. It is a title defective in form, and not sufficient for the prescription of ten and twenty years.

*Simon, J.,* delivered the opinion of the court.

Plaintiff alleges that he is the owner of a piece of ground, at the corner of St. Paul and Pigeonnier or Perdido streets, containing one hundred and twenty feet front on the former and two hundred feet on the latter ; which lot is the west corner of said Perdido and St. Paul streets ; which he has held by a just title, and together with those under whom he claims, by a quiet and undisturbed possession of more than twenty years. He also states that he has been disturbed in his possession by the defendant, who gives himself out as the owner of the lot, and is about improving the same, and prays for four hundred dollars damages against said defendant, and that his vendor J. H. Holland, be called in warranty, and in case he should not succeed in maintaining the title by him transferred to plaintiff, he be condemned to pay ten thousand dollars damages. Defendant Lallande joined issue by averring title in himself, as purchased from N. B. Lebreton curator to the estate of Jean Gravier, at the public sale of the property of the succession, and according to a plan made on the 3rd September, 1834. He further alleges that the titles filed by plaintiff, are null and void and can produce no effect against third persons ; that he, the defendant, has made improvements on the lot in question to the amount of one thousand dollars ; and concludes by praying that plaintiff's petition be dismissed, that the curator of the estate of Gravier be called in warranty, and that in case of eviction, he be condemned to pay him one thousand dollars damages. The warrantor also answered by pleading the general issue, admitting the sale made to defendant, and further averring

that the plaintiff's title is null and void, as none of the for-
malities required by law in forced sales were complied with;
he also denies that plaintiff ever was in possession of the
premises, which, on the contrary, always remained in Gra-
vier's possession until his death in 1834; and prays for the
dismissal of plaintiff's action. The District Court gave
judgment in favor of the plaintiff against the defendant
Lallande, and in favor of the latter against his warrantor,
reserving to the said defendant and warrantor, their right to
institute all actions for the nullity or rescission of the sheriff's
sale of the property in dispute, under which plaintiff claims
title. From this judgment the defendant and his warrantor
appealed.

The facts of the case show that on the 24th May, 1814,
a certain widow Rabasse obtained a judgment against Jean
Gravier, in the Parish Court of New-Orleans, for eight hun-
dred and ninety-one dollars with interest and costs. That on
the second of August, 1814, an *alias pluries fieri facias*, hav-
ing issued on said judgment, the sheriff partly levied it on
the lot of ground in question, describing it in his return to
be "a piece of ground situated in the Faubourg St. Mary,
having about one hundred and eighteen feet in front on St.
Paul-street, and about two hundred feet in front on Pigeon-
nier-street." The writ was returned for want of time on the
6th September, following. On the 12th of the same month,
another writ issued which was returned on the 3d October,
by stating that the property seized on former *fieri facias* was
not sold. On the 7th October, another writ issued, which
was returned on the 8th November, by mentioning the seiz-
ure of a lot of ground situated in the Faubourg St. Mary.
On the 16th November, another execution issued, and on the
5th December, it was returned thus: "property seized not
sold for want of time." On the 12th December, another
writ issued, and was returned for want of time on the 1st
May, 1815, and on the 9th May, another execution was
issued, which was returned on the 5th June, 1815; in which
return it is stated that a sum of one hundred and sixty-four
dollars (exclusive of sheriff's fees) was made by sale of pro-

perty by former writs on the 7th December, 1814; and from an entry made in a journal or book of sales kept in the Parish Court, it also appears that the sale of the lot in dispute, having produced two hundred and ten dollars, there remained, after deducting all the officers' fees, a balance of one hundred and sixty-four dollars in favor of the seizing creditor. The sheriff's sale of the lot in question, is dated the 19th May, 1815, recites the twelve months' note to have been given on the 7th December, 1814, being the day of the sale; and shows the adjudication to have been made on said day to one Wirtenbacken; who sold the premises to J. H. Holland, by act under private signature, on the 20th March, 1816, which act was regularly authenticated before a notary public on the 21st November, 1816, and the plaintiff acquired the same from Holland by a notarial act passed on the 3d December, 1835. The appraisement of the property seized was made on the 18th October, 1814, at different prices by two appraisers and an umpire, and is identified by the testimony of the then acting sheriff. An advertisement of the sale of the property seized, to be made at one year's credit on the 7th December, 1814, is also produced and proven to have been regularly published in a newspaper called "The Friend of the Laws;" this advertisement is dated the 23d November, and was proceeded by other written notices dated the 22d October, for the sale of the property to take place on the 22d November, ensuing. It is also in evidence that the plaintiff's vendor paid regularly the taxes on said property from the year 1819 to 1836.

It is contended on the part of the appellees: 1st. That the *fieri facias*, under which the seizure took place, was null, because property seized under previous writs, remained undisposed of.

2d. That it is not shown that the judgment was docketed, as required by the then existing laws.

3d. That the writ has no seal.

4th. That it is not shown the sheriff had an unexpired writ in his hands, when he made the seizure.

5th. That the sheriff had no writ at all in his hands when he made the sale.

6th. That the appraisement was irregular, as the appraisers were not sworn; the appraisement is not dated, and the third appraiser was not properly appointed.

7th. That the property was not sufficiently described in the advertisements, and 8th; that the advertisements were not published during the period required by law.

Whether an individual might, under the old Civil Code, obtain the rescission or nullity of the sale of his property by instituting a direct action of nullity, or by way of exception, appears to us to be a question of no materiality in this case; and we see no reason why the principal matter in issue should not be decided in the present action. We are, therefore, disposed to take the case on its real merits, and to look into the questions presented to our consideration on the validity of the sale made by the sheriff to Wirtenbacken, in order to put an end to this subject of litigation between the parties; due allowance being made for the difficulty of ascertaining whether all the formalities of the law have been complied with, at a time when judicial proceedings were very far from being as regular and as well understood as they now are.

I. When the execution under which the property in dispute was seized, was returned by the sheriff, it appears that he had sold the lots which had been seized under former writs, and that the amount of the sales being found insufficient, had then proceeded to making a new levy, previous to returning said execution. The return of the fourth execution states: that " *after having exposed them for sale* (the lots first seized) *according to law at one year's credit, G. Wirtenbacken bought them for three hundred and seventy dollars the first lot, and two hundred dollars the second, in all five hundred and seventy dollars. I then seized a lot, &c.* " This shows clearly that the new levy was made after the sale; and moreover, it is not shown that he ever released or abandoned the possession of the property sold under the writ returned on the 6th September, and we must presume that he kept it in his

EASTERN DIST.
December, 1840.

FINK
*vs.*
LALLANDE ET AL.

The sheriff may proceed to make further seizures under the same writ of *fieri facias*, if by the sale of the property first seized, it is insufficient to satisfy the writ.

possession until he could dispose of it; as the law stood at that time, it required three months to elapse before a definitive sale could be made if the preperty seized could not be sold for cash; and the sheriff may have been obliged to return his writs several times before the sale could take place; the several returns do not show any neglect on the part of the sheriff, and it does not appear to us unreasonable that he should have kept the property in his possession for the space of three months, considering the three different advertisements which the law required to make a sale at twelve months credit; we see no impropriety in the sheriff's making a new levy on some other property of the defendant in execution, by virtue of the same writ, after he had ascertained, by the sale of the former, that the property first seized was insufficient to satisfy this writ; and when the fourth *fi. fa.* issued, the three others had been successively and regularly returned; the case cited from *3 Martin, N. S.*, 90, is not applicable.

The want of docketing a judgment does not prevent its being executed.

II. Nothing shows that the judgment was not docketed, and we must presume that the law was complied with before the issuing of the first execution; the want of docketing would not, however, prevent the judgment from being executed.

A scroll, with the letters L. S. written in it, will be a sufficient seal to a writ of *fieri facias*, when it does not appear the court had any other.

III. We consider this point of a minor importance; the writ is in due form, and regularly signed by the clerk; and the circumstance that a scroll with the letters L. S. was used instead of a seal, is not sufficient to make us presume that the Parish Court had then a seal, particularly as the impression of a seal appears for the first time on the *fi. fa.* issued on the 12th September.

A sheriff's return is *prima facie* evidence of the legality of his acts; and it becomes the duty of the party attacking the validity of a sheriff's sale, to prove that the formalities required by law were not complied with.

IV. The sheriff's return is *prima facie* evidence of the legality of his acts; he must have known the extent of his writ, and the period within which he could legally act. 8 *Martin*, 682; 3 *Louisiana Reports*, 476; 5 *Idem.*, 486; 9 *Idem.*, 542. It is certainly the duty of a party attacking the validity of a sheriff's sale, to prove that the formalities required by law were not complied with. Nothing shows here that the sheriff made his levy after the return day.

EASTERN DIST.
*December,* 1840.

FINK
*vs.*
LALLANDE ET AL.

V. The writ was returned on the 5th December, and the sheriff's sale took place on the seventh; he had then no writ in his hands, since the next execution was not issued until the 12th of the same month. This court has held in the case of *Aubert* vs. *Buhler*, 3 *Martin*, *N. S.*, 196, that if a levy be made under a writ of execution before the return day, the sheriff may proceed to sell afterwards. In our sister states, under the common law system, a writ of *venditioni exponas* is generally issued after the return of the *fi. fia.* under which a seizure has been made; but this proceeding is unknown to our laws, and still, according to our jurisprudence, the sheriff may proceed to selling the property seized, although in making said sale, he cannot be considered as deriving any authority from a writ which has expired, whether kept by him or returned after the return day. We are not ready to say' that the fact of the sheriff having returned the writ under which he had made the seizure, would in itself be sufficient to invalidate his sale, unless there resulted a clear violation of the law, which on the contrary, as it then stood, is silent on this subject. We think, therefore, that, although the most proper and safe course would have been to take out an alias *fi. fa.* in order to make a regular return of his proceedings, the sheriff might legally proceed to selling the property seized under a former writ, which he had thought himself bound to return for want of time.

> If a levy be made, within or before the return day of the execution, the sheriff may proceed to sell afterwards, even after the return of the writ.

VI. The appraisement was perhaps irregularly made; but as the sale was made at one year's credit, for whatever price should be offered, the appraisement became immaterial; this point might have been of some importance, had the appraisement complained of been the basis of a cash sale.

> The appraisement is immaterial, in a sheriff's sale on twelve months' credit, when the property must be sold for whatever it will bring

VII. The property appears to us to have been sufficiently described in the advertisement; it is in conformity with the return of the sheriff; it has not been shown that the purchaser ever mistook the lot which was adjudicated to him, and the present controversy has convinced us that the *locus in quo* is not the real matter in dispute between the parties.

VIII. The advertisement is dated the 23d November, and the sale took place on the 7th December, giving fourteen days,

FINK
vs.
LALLANDE ET AL.

Before the adoption of the constitution, a compliance with either the English or French text of the law was sufficient.

(one inclusive and the other exclusive) as required by the English text of the then existing laws, passed before the constitution of the state was adopted. It is true that the French text says fifteen days, but as the two texts cannot be reconciled, we must say that a compliance with either ought now to be considered sufficient; and it is well known that at that remote period, both texts having equal force, the two populations of Louisiana were in the habit of observing the laws as they understood them in their respective languages.

After a lapse of twenty years, the legal presumption is in favor of the sheriff's acts; and of the legality and validity of a sheriff's sale.

On the whole, we are of opinion that after a lapse of more than twenty years, as this court has held in the case of *Brosnaham et al.* vs. *Turner, ante,* 433, lately decided in the Western District, the legal presumption must be in favor of the sheriff's acts. If otherwise, there would be few ancient sales which could be maintained; as it would be almost impossible to produce the appraisements, advertisements, and other proceedings relative thereto. Plaintiff has shown in this case, a judgment, a writ of execution, and a regular deed of sale from the sheriff; he and those under whom he claims have had the civil possession of the property in dispute for at least twenty-two years, within the knowledge of Jean Gravier; they always paid the taxes on it, and have had every reason to consider the premises as their own. The silence of Jean Gravier, the defendant on whom they were sold, during such a lapse of time, shows at least an acquiscence on his part almost equal to a tacit ratification of the sheriff's acts. Under our present system, the formalities required in forced alienations, are so well defined and pointed out in our Code of Practice, that there could be no excuse for not pursuing them strictly, but we do not think that the proceedings had under the former laws of the state, ought to be scrutinized with the same degree of rigidity; and we therefore conclude that the sale made by the sheriff to Wirtenbacken, in 1814, under which the plaintiff claims title, is valid; and that Jean Gravier having then been divested of his title to the property in dispute, the same could not be sold as belonging to his succession.

With this view of the case, it becomes unnecessary to examine the question of prescription relied on by the plaintiff, and our judgment must be in his favor without any reservation or restriction.

The judgment of the lower court must, therefore, be amended, inasmuch as it does not decide on the question of title, definitively in favor of the plaintiff; and as it disregards the admission made by the parties of the amount claimed for improvements made on the property in dispute, by the defendant, to wit: four hundred and ninety-five dollars, from which the plaintiff must necessarily be benefited.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be annulled avoided and reversed; and this court, proceeding to give such judgment as ought to have been rendered by the lower court, it is ordered, adjudged and decreed, that the plaintiff be forever quieted in his title to and possession of the property described in his petition, as against defendant and his warrantor; that the sale from the estate of Gravier to said defendant be annulled, and set aside, and that the defendant recover of the plaintiff the sum of four hundred and ninety-five dollars, with legal interest from the date of this judgment, until paid; and that the costs of the lower court be paid by the defendant's warrantor; those of this court to be paid by the plaintiff and appellee.