MARGUERITE AURORE DROUET and others *v.* JOHN RICE and another.

Where property sold under execution at twelve months' credit, and conveyed to the purchaser, is resold on account of the failure of the latter to pay the price, the first purchaser, or his heirs alone, can avail themselves of any irregularities in the second sale. The original owner, having been divested of his title, by the first adjudication, cannot take advantage of any illegality in the second sale.

A scrawl, enclosing the letters L. S. affixed to a *fi. fa.*, will be good as a seal, where, from being used in other writs issued from the same court, it is to be presumed that the court had no engraved seal.

A sheriff's deed, under the act of 10th April, 1805, headed with the title of the suit under which the property was sold, and referring to the *fi. fa.* which recites the judgment and mentions the court by which it was rendered, contains a sufficient reference to the judgment under which the writ was issued.

After the lapse of twenty years, the legal presumption is in favor of the acts of sheriffs.

Proceedings for the forced alienation of property under the former laws of this State,

will not be scrutinized with the same rigor as those under the present system, the formalities required by which are well defined in the Code of Practice.

Under the act of 10th of March, 1834, all informalities connected with any public sale by a parish judge, sheriff, auctioneer, or other public officer, are prescribed by the lapse of five years.

APPEAL from the District Court of the First District, *Buchanan*, J.

*J. F. Pepin* and *A. Hennen*, for the appellants.

*Preston*, for the defendants.

MORPHY, J.   This suit is brought to recover six lots and a half in the Second Municipality of New Orleans, occupying the whole front of a square on St. Peter street, with a depth of one hundred and twenty feet on Perdido and Poydras streets.   The petitioners allege that Joseph Drouet, whose children and heirs they are, purchased this property of Jean Gravier, on the 14th of April, 1807, and remained in possession of it until his death, which happened on the 20th of October, 1811 ; that the defendants are in possession of the six lots and a half ; that they claim them as their own property, and refuse to deliver them up, although amicably requested so to do.   The defendants deny that the plaintiffs have any right or title to the lots described in their petition, but aver that they, the defendants, are the sole and rightful owners of the same. They plead prescription, and pray that John H. Holland, from whom they purchased, may be cited in warranty, &c.   The District Court gave judgment in favor of the defendants, and the plaintiffs have appealed.

The facts of the case show that, on the 29th of November, 1814, George Moreau, a free man of color, obtained a judgment for $434 against the heirs of Joseph Drouet, the present plaintiffs, or those under whom they claim ; that under this judgment four lots and a half of those now claimed, were levied upon, and, on the 4th of September, 1815, sold to Samuel C. Young, for $730, at one year's credit ; that on his failure to pay the price, he was sued by G. Morgan, then sheriff, together with P. F. Gabourdet, his surety on the twelve months' bond, and that on the exposure of the same property for sale by the coroner, it was adjudicated, on the 8th of July, 1818, to Benjamin P. Porter, who, it afterwards appeared, had bought it for himself and for John H. Hol-

land ; that at the death of the former, his executors had his undivided half of these lots offered for sale, when it was purchased by Holland, who, in 1835, sold to the present defendants not only these four and a half lots, but, also the two adjoining ones extending to Poydras street, which he had shortly before purchased from the plaintiffs and their co-heirs.

There is no dispute as to the two lots last mentioned, all claim to them having been withdrawn ; but, in relation to the others, it has been contended that the adjudication to John H. Holland, at the coroner's sale, was null and void, because Holland was at that time acting in the capacity of a deputy coroner, and could not lawfully purchase at a sale made by himself in that capacity.   It is clear that if there is illegality in this sale, none but the heirs of Young can avail themselves of it.   As to these plaintiffs, they had nothing to do with it, as they had been previously divested of their title by the adjudication of their property to Samuel C. Young in 1815.   But it is urged that the sheriff's sale, in the suit of *Moreau* v. *Drouet*, was irregular and void, and did not divest the plaintiffs of their title.   The nullities and irregularities relied on are : *first*, that the writ of *fi. fa.*, under which the sale was made, had no seal affixed to it ; *secondly*, that the sheriff's deed of sale to Samuel C. Young does not refer to or mention the *judgment under which* the *fi. fa.* had been issued ; *thirdly*, that the property seized was described in the sheriff's return as a lot with buildings thereon, and sold as being four lots and a half.

I. This point was not much insisted upon.   We consider it, at all events, as one of minor importance, as we had occasion to say in the case of *Fink* v. *Lallande*, 16 La. 554.   The writ is in due form, and signed by the clerk.   On examining the record of the case of *Moreau* v. *Drouet*, which has been sent up in the original, we find that no less than five writs of *fi. fa.* were successively issued.   On all these, and on the other papers of the suit, we see the same kind of scrawl, to wit, a scrawl with the letters L. S. inscribed.   We are bound to infer that in 1815 the Parish Court of New Orleans had no engraved seal, nor are we aware of any law that made it its duty to have one.

II. The sheriff's deed of sale is headed with the title of the suit of *Moreau* v. *The Heirs of Drouet*.   It, moreover, refers to the writ

of *fi. fa.*, which recites the judgment and the court by which it was rendered. This we held to be sufficient in *Brosnaham et al.* v. *Turner*, 16 La. 441, when a similar objection was urged. On examining the form prescribed by the legislature for a sheriff's deed at that time, we find that the sheriff copied his deed to Young almost *verbatim* from that form, which does not require the recital of the judgment. 2 Mart. Dig. 334.

III. The identity of the property seized with that sold, is sufficiently established by the testimony of Lemos, the deputy sheriff, and by the description given of it in the sheriff's deed. This court have more than once declared that, after the lapse of twenty years, the legal presumption must be in favor of the validity of the acts of sheriffs ; and that proceedings had under the former laws of the State will not be scrutinized with the same degree of rigor as under our present system, in which the formalities required in forced alienations are well defined and pointed out by the Code of Practice. 16 La. 554. In the present case, the defendants have shown a judgment, an execution, a return thereon, and a sheriff's deed. This is as much as can be reasonably required, when it is considered that the suit of *Moreau* v. *Drouet* was instituted in May, 1813, and bears the No. 17 on the docket of the Parish Court. They, moreover, show that they, or those under whom they hold, have improved the property, and occupied it upwards of twenty years, and that as far back as the year 1826, it was put down on the assessment rolls as belonging to John H. Holland. Upon such a showing the defendants could have safely rested their case ; but they have invoked the statute of the 10th of March, 1834, which was, no doubt, intended to put a stop to suits of the description of the one before us. It provides that all informalities connected with, or growing out of any public sale made by a parish judge, sheriff, auctioneer, or other public officer, shall, after the lapse of five years from the making of the same, be prescribed against, &c. This provision of law seems to us to cover completely the case of the defendants, against whom this suit was instituted only on the 19th of March, 1840.

*Judgment affirmed.*