# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## FLEMING, ADMR. *v.* HOLT *et al.*

(Absent, HAYMOND, JUDGE).

Decided December 12, 1877.

1. The *cestui que trust* may bring a suit in chancery for the specific execution of a contract, made by a third party with the trustee in a deed of trust, for the purchase of a tract of land conveyed by the deed of trust, and make the trustee and purchaser of the land and grantor in the deed of trust defendants, though the more proper mode of instituting such suit would be for the trustee and *cestui que trust* to unite as plaintiffs.

2. In such a suit, if the assignor of a bond is the grantor in the deed of trust, the obligors in the bond need not be made defendants.

3. In such a suit if any portion of the purchase money due from the purchaser is found to be properly payable to the grantor in the deed of trust, the court may decree it to be paid to him by his co-defendant, the purchaser.

4. Such a suit may be brought against the purchaser of land sold at public auction by the trustee, on the refusal of the purchaser to comply with the terms of sale, without the trustee selling the land again at auction; and if the trustee made a second sale, no such suit would lie against the first purchaser.

5. A purchaser of lands at public auction, made by a trustee, can only require a deed from the trustee with special warranty.

6. Such a purchaser will be compelled to accept such a deed and pay the purchase money, though after the sale he ascertains that the prior liens on the land are larger than he supposed, if he was not mislead by the seller as to the amount of these liens.

7. Though, in justice to the grantor and the *cestui que trust*, the trustee ought not to sell lands, until the amount of prior liens are first ascertained, yet a purchaser at such sale has no right to complain of the trustee making such sale, the rule *caviat emptor* applying to him.

8. When an answer admits an agreement for the sale or purchase of land alleged in the bill, though it be but a parol agreement, the defendant must plead the statute of frauds and perjuries, or the answer must claim the benefit of this statute; otherwise he is taken to have admitted an agreement, which is either good under the statute, or otherwise binding on him.

9. The effect is the same under our rules of pleading when the agreement, though parol, is positively and definitely alleged in the bill, and he fails in his answer to deny it, though he does not admit it.

10. The admission in the answer, which produces this effect, is an admission of the fact, that the contract alleged in the bill was made; and the effect of such admission will not be changed by a denial of the justice of enforcing such contract specifically, or by allegation of other facts, which, if true, would render it improper to enforce such contract.

11. The 16th section of chapter 131 of Code of West Virginia providing, that when a judgment or decree is rendered for the payment of money, it shall be for the aggregate of the principal and interest due at the date of the judgment or decree, with interest thereon from that date, does not violate the provision of the Constitution of the United States, prohibiting any State to pass a law impairing the obligation of contracts.

Appeal from, and *supersedeas* to, a decree of the circuit court of Gilmer county, rendered on the 22d day of May 1874, in a cause in chancery then pending in said court, wherein Robert B. Fleming, administrator *de bonis non* of Robert Linn deceased, was plaintiff, and John W. F. Holt, C. B. Conrad and John Webb were defendants, granted upon the petition of said John W. F. Holt.

The Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree complained of.

GREEN, PRESIDENT, furnished the following statement of the case:

In 1867 Robert F. Fleming, administrator *de bonis non* of Robert Linn, filed his bill in the circuit court of Gilmer county, praying for the specific enforcement against J. W. F. Holt of a contract for the purchase of a lot and grist and saw mill. The bill alleged that a deed of trust had been executed by John Webb to C. B. Conrad, trustee, conveying said real estate, to secure to Robert Linn $1,150, due by two single bills executed by Jessie L. Covert and B. B. Covert to said Webb, and by him assigned to Robert Linn, the plaintiff intestate. Said single bills were for like amounts, one payable April 2, 1858, and the other October 2, 1858. The trustee, pursuant to the provisions of said deed of trust on the requisition of plaintiff, advertised said real estate for sale at public auction, at the front door of the court house of Gilmer county, for cash, on April 2, 1867. At said sale J. W. F. Holt became the purchaser, he being the highest bidder; and that at the time of the sale Conrad, the trustee, who was the auctioneer, made a memorandum of the sale in these words:

"The mill property, carding machine, two lots, &c., in town of Glenville, sold at public sale, for cash in hand, on 2d day of April 1867, to J. W. F. Holt, he being the highest bidder, for the sum of one thousand one hundred and fifty-five dollars ($1,155.00).

C. B. Conrad, *Trustee*."

The bill states that Conrad, the trustee, distinctly announced, that the sale was made subject to all other liens and incumbrances on said property, of whatever nature; that said Holt heard this announcement at the time he was bidding, and bought the property with the full knowledge of all the liens on the said property; that all the liens were of record in said county of Gilmer, except possibly one, and of this Holt had personal knowledge; and that Holt had repeatedly said before the sale, that he would purchase the property and give therefor $1,500.00 or $1,600.00, subject to all the liens; that Holt

had been repeatedly called on to comply with the terms of said sale, but refused to do so; that Conrad, the trustee, had not brought suit to enforce this contract, for some reason, probably because he had no means in his hand to prosecute such suit; that Holt after the sale called on the tenants, occupants of the property, for possession of it, and actually took possession of the garden; that this property has since said sale rapidly fallen into decay for want of attention and repairs, and is now worth much less than it was, and would now probably be worth very little more than the prior liens on it, and if now sold, subject to them, would probably bring little or nothing; that Conrad, the trustee, has been called on to institute such a suit as this, but he has failed to do so. The bill makes as defendants to the suit, Holt, the purchaser, Conrad, the trustee, and Webb, the grantor in the deed of trust; and prays that specific performance of said contract of sale be decreed; and that Holt be required to pay the purchase money to the trustee, or to such other person as the court may direct, on receiving a deed for the property, and for general relief.

Conrad, the trustee, files his answer, admitting expressly most of the allegations in the bill, and denying none of them. Holt in his answer, states that in a casual conversation made carelessly and without any object, he did say that "if the liens on said property did not exceed $575.00, which was the amount he was informed by B. B. Covert, when he was the owner of the property, was the whole amount of the liens thereon, he would give $1,500.00 for same, and pay said amount named by Covert as constituting the prior liens. He states the transaction substantially as follows: That when the sale was made he was in attendance on the court as sheriff, it being then in session, and the sale taking place at the front door of the court house; and going to the door to call a witness, he found the sale being made, and being bantered to make a bid, he did

so, bidding $1,555.00. He knew nothing then about this sale, except it was a sale for cash; but that after he had made this bid some one said, that there were two prior deeds of trust on the property; that the bidders on this suggestion, repaired to the clerk's office to investigate the truth of the suggestion; he too after a while went there, and found Wyatt, who had been bidding, and others making the investigation; that finding Mr. Bennet, who had previously been his attorney, in the office, he asked him to investigate the matter. After a few minutes investigation, he advised him, Holt, to have nothing to do with purchasing this property, as there were many prior liens on it; that he went to the front door of the court house, and told the trustee as well as the plaintiff, that he would not recognize the sale to him, it having been knocked off at his bid in his absence, and refused to pay for the property, telling them the result of Mr. Bennett's investigations. He denies taking possession of the property after the sale; says that he had rented for his son-in-law, before the sale, a portion of this property, and the occupation of his son-in-law, after the sale, of a portion of this property had reference to this renting and not to his purchase. All that he asks is full justice. He does not, in his answer, rely on the statute of frauds or perjuries, or say anything about the insufficiency of the memorandum in writing of the contract, filed with the bill, or the want of authority on the part of Conrad to make the same so as to bind him (Holt).

The evidence, which is given in some detail in my opinion following, in general sustains the allegations of the bill, and does not sustain the allegations in the answer of Holt. The inference fairly to be drawn from it is, that Holt knew that this property was being sold subject to all prior incumbrances; and also knew that there were such prior incumbrances amounting to a considerable sum. Whether he knew accurately the amount of these liens does not appear; but he had as

good, if not better, opportunity of knowing their amount as any other bidder, he being the sheriff of the county in which these liens were recorded, and many of them being judgments, and in one of these prior liens he was personally interested to the amount of some $250.00.

It is unnecessary here to give a detailed statement of the evidence; a sufficiency of it is given in such detail in my opinion, as to make it intelligible. Webb filed no answer, and the bill was taken for confessed as to him. On the 22d of May 1874 the court heard the cause on this bill and answer, and general replication thereto, and on the depositions, and decreed that Robert F. Fleming, administrator *de bonis non* of Robert Linn deceased, do recover of John W. F. Holt $2,219.50, that being the amount of the purchase money due upon the contract of sale, including interest to date, with interest on said $2,219.50 from said 22d day of May 1874 till paid, and the costs of this suit; and on the collection of same by plaintiff, he shall pay to Conrad, the trustee, the costs, expenses and commission of sale, and the residue to be applied as a credit on debt, secured by the deed of trust. And it was further ordered that the deed to Holt, filed with counsel's answer, be delivered to him. And from this decree an appeal has been taken.

*Jonathan M. Bennett,* for appellant:

There are six points fairly arising upon the record of this case, each of which this Court by the 5th section of 8th article of the Constitution is required to decide.

1st. The trustee should have been the plaintiff, and not the creditor's personal representative; for if the bid of the purchaser exceeds the creditor's lawful claim, the surplus should be a fund in the hands of the trustee, to be disbursed according to the terms of the deed of trust. Here the creditor's personal representative is plaintiff, and a decree was made for the payment of the whole bid at the trustee's sale to the creditor, which exceeds by

several hundred dollars the just demand of the creditor.
This is erroneous. 6 Wall. 192; *Ellet* v. *Paxton*, 2 Watts
& Serg. 418; Pa. Rep., in proof, pp. 45, 46.

2d. The bill should have been dismissed for want of
proper parties, or for making parties improperly. Jesse
L. Covert and B. B. Covert, the real debtors, and whose
notes are secured by the deed of trust, are not parties.
John Webb, the assignee of said notes, and who assigned
them to Robert Linn, the creditor, is a party. The
original debtors, as well as their assignee, are materially
and vitally interested, and should have been parties to
the suit: Story's Eq. Plead., 76 to 197.

3d. The liability of a defaulting purchaser must be
determined by a re-sale before suit. This sale of the
mill property under a deed of trust is analogous to the
sale of real estate under a writ of *fieri facias,* and under
decrees of courts. In Virginia, and when this sale was
made in West Virginia, if a purchaser failed to comply
with the terms of sale, the officer may re-sell the proper-
ty forthwith. If on a re-sale the property be sold for
less than it sold for before, the first purchaser shall be
liable for the difference: §16, ch. 187, Code of Va.;
ch. 42, Code of Va.; *Hall* v. *O'Hanlan,* 3 Brev. 46, 180;
*Webster & Ford* v. *Hoban,* 7 Cranch 399; *Shaw* v. *Shaw,*
4 Cranch C. C. Rep. 715.

4th. This is a parol contract for the sale of real estate.
To make a contract for the sale of real estate binding, it
must be in writing. Sales under a deed of trust are
within the statute of frauds and require a note or mem-
orandum in writing, to make the contract binding.
Exhibit three does not fulfill the requisition of the statute
of frauds; and it is the only writing on the subject. It
fails to show where the sale took place, whose
property was sold, and by what authority the sale was
made, as well as the species and quantity sold. *"Et cet-
era"* used in the memorandum denotes the rest, or others
of the kind. A bill for specific execution could not be
enforced in equity, because of the statute of frauds, and

for want of certainty as to the property sold : Story on Contracts, pp. 312 to 330.

5th. The legal title should have been brought in before sale. Judge Moncure in delivering the opinion of the court in the case of *Rossett* v. *Fisher,* said : " It is unnecessary to consider other circumstances for setting aside the sale, " for he adds, " *I am of opinion that the cloud over the title at the time of sale is of itself a sufficient ground for that purpose.*" This deed like that of Rossett conveyed, and the trustee sold, only the equitable title to the property; the legal title was outstanding in Robert Linn, the person and creditor who was enforcing this sale. If a sale by a trustee is resisted by the purchaser, and the aid of a court of equity is invoked, the purchaser may show cause against the confirmation of the sale by the court; and in this respect the sales by commissioners of courts and the sale by trustees are identical; in both and in each the purchaser is entitled to a day in court. In the case of *Faulkner et al.* v. *Davis et al.,* 18 Gratt. 660, the court announced the doctrine, that the proper time for a purchaser to enquire into the title and satisfy him about it, is while the contract of sale remains executory : *Buchanan* v. *Clark,* 10 Gratt. 164 ; *Rossett* v. *Fisher,* 11 Gratt. 492 ; *Goddin* v. *Vaughn,* 14 Gratt. 102 ; *Faulkner et al.* v. *Davis et al.,* 18 Gratt. 660 ; 1 Tuck. 2 book, pp. 103 to 106 and authorities there cited.

6th. The act of the Legislature, by virtue of which this decree allowing interest and principal to be compounded, and both to draw interest, is repugnant to the Constitution, and void as to all contracts existing, when the act was passed. The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. Any deviation from its terms, by postponing or accelerating the period of performance, which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute, or apparently immaterial in their

effect upon the contract of the parties, impairs its obli-
gation : Chapter 125, §46 Code West Va.; chapter 131,
§14, Code of West Va.; *Green* v. *Biddle*, 8 Wheat. p. 1

*Henry Brannon,* for appellee.

A purchaser, at a sale by a trustee under a deed of trust to secure debts, must take such title as is vested in trustee; the rule of *caveat emptor* applies as between the trustee and creditors and purchaser.

Opinions of Judges Tucker, in *Peterman* v. *Laws*, 6. Leigh 529 ; Carr, in *Saunders* v. *Pate,* 4 Rand. 8 ; Baldwin, in *Sutton* v. *Sutton,* 7 Gratt. 237 ; Lee, in *Goddin* v. *Vaughn,* 14 Gratt. 117 ; Stanard and Baldwin, in *Findley* v. *Toncray,* 2 Rob. 374 ; *Grantland* v. *Wight,* 5 Munf. 295 ; Rawle on Covenants, for title. 418.

Such sales in this respect savor of the nature of judicial sales ; and to judicial sales the rule *caveat emptor* applies with full force : *Threlkeld* v. *Campbell,* 2 Gratt. 199 ; *Worsham* v. *Hardaway,* 5 Gratt. 60 ; *Young* v. *McClung,* 9 Gratt. 359; *Daniel* v. *Leitch,* 13 Gratt. 195 ; *Faulkner* v. *Davis,* 18 Gratt. 660 ; *Christian* v. *Cabell,* 22 Gratt. 97 ; Rorer on Judicial Sales, §459.

But aside from the above points, Holt had notice of incumbrances. His agent had notice; and notice to agent is notice to principal. Story's Agency, §140; per Baldwin, J., 5 Gratt. 238.

Holt had personal notice. Thus he assumed risk, bought for weal or woe, and must complete his purchase·

Opinions of Brooke and Roane, Judges, 2 Munf. 182; Lee, Judge, 14 Gratt. 117; Moncure, President, 18 Gratt. 661.

Where difficulties arise in making title, purchaser should not take possession until their removal. If he does, it may be a waiver by him. By Staples, Judge, 22 Gratt. 99, citing 1 Sug. p. 12 §34.

Such cases as *Fisher* v. *Rossett,* 11 Gratt. 492, do not apply to cases like this.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first error assigned by the appellant's counsel in this case is, that the bill should have been dismissed because the suit should have been brought for the specific performance by the trustee, Conrad, and not by the *cestui que trust*, Linn's administrator, and that the allegation in the bill, "that the plaintiff had requested Conrad, the trustee, to institute this suit, but for some cause he had not done so, probably for want of means," was no sufficient reason why Conrad's name had not been used as plaintiff, as Linn's administrator had a right, without his consent, to use his name. The authorities cited to sustain this position were *Ellet* v. *Patxon*, 2 Watts & Serg. 418 and *Vernor* v. *Henry*, 6 Watts 192. Both of these cases were actions at law. The first was an action of *assumpsit*, to recover damages for the non-performance of a contract to purchase land of a trustee. The legal cause of action was obviously in the trustee only ; and therefore the court properly held, that such an action at law could not be brought by the *cestui que trust*.

The second case was an action of ejectment; the parties entitled to the land sued in the name of the executors holding the legal estate. These executors proposed to dismiss the suit; the court refused to permit them to do so, as there could be no judgment for costs against them personally, but only a judgment to be paid out of the estate in their hands, which belonged to the parties for whose use the suit was really brought. The cases seem to me to be inapplicable to the question raised by the appellants. The rules governing the question : who should be parties, either plaintiff or defendant, in a suit in equity being entirely different from those in a suit at law, and the practice of bringing a suit and endorsing it for another's use being unknown in equity, where the general rule is, that all persons materially interested in the subject matter of the suit must be formally made parties, either as plaintiffs or defendants.

The trustee holding the legal title must be made a party in a suit in equity concerning the trust subject; and the *cestui que trust* must generally be also made parties. But it is very often regarded by a court of equity, though never by a court of law, that it is immaterial whether a particular party in certain cases is made a plaintiff or defendant. In the present case it seems to me immaterial whether the trustee, Conrad, was a party plaintiff or defendant. In suits of this character he has frequently been made a party defendant without the bill's assigning any reason why he was not made a plaintiff. Thus in *Cope* v. *Parry*, 3 J. & W. 537, Cope made a covenant with Jones, a trustee, to convey certain property to him in trust for certain parties. They instituted a suit against Cope's assignees to enforce a specific performance of Cope's covenant with their trustee; but they not only did not join the trustee, Jones, as a co-plaintiff with them, but did not even make him a defendant. The court did not dismiss the bill on that account, but simply required the plaintiffs, the *cestui que trusts*, to make the trustee Jones a party defendant.

In *Hook* v. *Kennear and Sir John Phillips*, 3 Swan. Ch. 417, it was contended by counsel, "that a chancery court never decrees a specific execution of an agreement, but at the instance of the party with whom the contract was made." But the Lord Chancellor in his decision says: "It is certain that if one person enters into an agreement with another for the benefit of a third person, such third person may come into a court of equity and compel a specific performance." And this point was so expressly decided in *Cook* v. *Cook*, 2 Vt. 36.

While the trustee, Conrad, might more appropriately have joined with the *cestui que trust*, Linn's administrator, as one of the plaintiffs in this cause, still as he has been made a defendant this is sufficient.

It is also insisted that Jesse L. Covert and R. B. Covert, were necessary parties to this suit. No authority is cited to sustain this position, and I can not see that they

Syllabus 2.

are in any way interested in the subject matter of the suit. To them it is entirely immaterial whether Holt is requir- ed to take the land of Webb, bought by him of Webb's trustee or not. They executed their two single bills to Webb and he assigned them to Linn; who gave a deed of trust on his real estate, to secure their payment to Linn. It is immaterial to them, whether the debts are paid by the sale of Webb's property or not, or whether Webb or his property pays more than is due on these debts or not. For in any event they will be responsible to Webb, or to Linn's executor for so much of these debts as they themselves, have not paid; and only for so much. They were therefore properly not made defendants to this suit.

Syllabus 4.

The next position assumed by the appellant's counsel is, that as the statute law provided, that "if at any sale by an officer, under *fieri facias* the purchaser shall not comply with the terms of sale, the officer may re-sell the prop- erty; and if on the re-sale the property be sold for less than it sold for before, the first purchaser shall be liable for the difference. Code of Va. of 1860, ch. 53, § 16. The appellant's counsel argues that the sale of the land in this case, by the trustees at auction, was analo- gous to a sale made under an execution by a sheriff; and that therefore before the purchaser Holt, could be sued at all, it was necessary for the trustees to re-sell the prop- erty, and sue Holt for the difference, if any, in the price obtained at the two sales. It seems to me, that it would be a strange construction of this statute, if it could be supposed not only to authorize a trustee, who had once sold land to re-sell it at risk of purchaser; but further pro- hibited a suit against a purchaser for non-compliance with the terms of sale, till such re-sale was made. If so this statute abolished all suits for specific performance against purchasers of lands at public sales, as of course no such suit could be brought after such re-sale. There have been nevertheless, many such suits brought in Virginia, and in this State, while this statute about *fieri facias* was in force, and neither court or counsel, ever before im-

agined, that this statute forbid such a suit for specific performance. It does not seem ever to have occurred to any one, that this statute could possibly be construed to have any effect on a suit brought for the specific execution of a contract for the sale of lands against a purchaser, though made by a trustee at auction. If the trustee had re-sold, and conveyed to another, having thereby deprived himself of the power, of complying with his contract, I do not suppose he would have had any action against the first purchaser, and he certainly could not have brought such a suit as this in equity; but surely if he could thus re-sell, without destroying all right of action, on his part it was at least optional with him not to re-sell, if he chose to enforce the contract already made. Thus if it is thought advisable a court of chancery which exercise over sales made under its order a much greater control, than over contracts made between parties, can if it thinks it advisable, re-sell property bought at a sale made by a master commissioner at the risk of first purchaser; but this is optional with the court, and if it does not prefer so to act, it may enforce the original contract against the purchaser without making any re-sale. See 2 Daniel's Chancery Practice p. 1282.

It is argued by appellant's counsel, that a purchaser at a sale by a trustee, before he accepts a deed, stands in the same condition, as a purchaser at a judicial sale before confirmation. He cites no authority to sustain such a position, and none can be found. There is no question, but that the purchaser, at a sale by a commissioner of the court has to the time the sale is confirmed the right to inquire into the title of the property, and if it is defective the court will let him off from his bid, until such sale is confirmed by the court, the contract of the purchaser is incomplete; but when once completed by the confirmation of the court, the purchaser will not be let off from his contract, though the title be found to be defective; the sale like the sale by a trustee, is of

1877.
Special Term.

Fleming, adm'r,
v.
Holt *et al.*

Syllabus 5.

course without general warranty; and the purchaser when once his bid has been accepted by the court and the sale confirmed, must take the land though before the deed is executed and received by him, he discovers, that the title is defective. See *Young & Bowyer* v. *Mc-Clung*, 9 Gratt. 336; *Daniel* v. *Leitch*, 13 Gratt. 195; *Faulkner* v. *Davis et al.*, 18 Gratt. 660. A sale by a trustee, like a sale by a commissioner, is without warranty; but there is this obvious difference between the two : the contract of purchaser at a sale by the commissioner is incomplete, till his bid is accepted by the court, who is the real seller of the property, the commissioner of sale being the mere agent of the court. The bid is accepted by the court by the confirmation of the sale; after that, though the purchaser before the deed is made to him finds out that the title to the land is defective, he is nevertheless bound to receive it, and pay the purchase money. In a sale by a trustee, the court does not accept the bid of the purchaser, but it is accepted by the auctioneer, when he knocks the land down, and on the making by him of a memorandum of the sale and its terms, signed by the auctioneer, the contract for the sale is as complete as the contract for the sale made by a commissioner is when the court accepts the bid by confirming the sale. After such knocking down of the land by the auctioneer and the making of such memorandum, the purchaser must accept the deed and pay the purchase money, though he does find the title defective. He must if he wishes to do so, investigate the title in this case, as in the other, while the contract is incomplete, that. is in the last case, before land is knocked down to him.

The appellant's counsel also insists, that as it is the duty of the trustee, where impediments to the fair execution of the trust, such as for instance a cloud upon the title, or an uncertainty in the amount to be raised, before he sells to apply to a court of equity to remove these impediments (*Buchanan* v. *Clark*, 10 Gratt. 164), if he

1877.
Special Term.

Fleming, adm'r,
v.
Holt *et al.*

makes such sale before so applying, the purchaser would have a sufficient reason to refuse to comply with his contract of purchase; and as countenancing this position he relies specially on the case of *Rossett* v. *Fisher*, 11 Gratt. 492; but it seems to me, that case gives no countenance to such position. In that case the trustee, there being a cloud on the title, sold the property in the absence of the grantor, who had sent to his agent the money necessary to pay off the *cestui que trust*; the money was in the postoffice at the time, but had not been delivered to this agent of the grantor, though he had called for it; at such sale, the *cestui que trust* became the purchaser at one-fourth of the actual value of the land. The court set aside such sale on the suit of the grantor in the deed upon the ground, that the trustee was the agent of both the grantor and *cestui que trust*, and had improperly permitted the urgency of the *cestui que trust* to induce him to sell under circumstances injurious to the grantor, whose agent the trustee also was, at a grossly inadequate price; the *cestui que trust* having thus induced the trustee to violate his duty, the court held it would be inequitable to permit him to profit by this breach of duty, by getting the land at one-fourth its value. The court expressly declined, to decide what would be the rights of a *bona fide* purchaser at such sale without notice of these facts, if such purchaser had been, as in this case, a third party. In other words, if Holt had purchased this land at one-fourth its actual value, the court declines to say whether he could have insisted upon the sale. But be this as it may, it seems to me obvious, that though some possible doubt might exist, as to whether Holt could have availed himself of a breach of trust by the trustee, to get the land at a grossly inadequate price, in the case before the court he cannot for such reason be permitted to avoid his contract. The trustee in this case was not guilty of any improper conduct as in that. For here it does not appear, that the grantor in the deed ever had any objection to the sale

being made, though there was a cloud on the title. And if both the grantor and the *cestui que trust* wanted the sale to be made, the trustee was not in any way violating his duty in making the sale, though there was a cloud on the title, he was agent only for Webb and Linn's administrator, and acting according to their wishes, he cannot be blamed. And a purchaser at the sale, Holt, for whom the trustee was in no manner an agent, cannot complain that the trustee, Conrad, in accordance with the wishes of his principals, sold the land under circumstances, which gave to the purchaser, Holt, an opportunity to buy it at a sacrifice. The selling of this property, while under the cloud, could not be and was not the cause of Holt's suffering any loss; and he cannot therefore complain of this sale being made under these circumstances. If he sustained loss by his purchase, it can only be attributed to want of sound judgment, or to gross carelessness on his part.

The appellant's counsel assigns as another error, that the evidence in the case shows he made no valid contract; that the statute of frauds, chapter 143 of Code of 1860, p. 627, provides, " That no action shall be brought upon any contract for the sale of real estate, unless the contract or some memorandum or note thereof be in writing and signed by the party to be charged thereby, or his agent." And that the contract or memorandum thereof, signed by Conrad, the trustee, who acted as the auctioneer, unexplained by parol evidence, is insufficient to establish the contract, on account of its vagueness. And in this connection he might have insisted, though he did not, that Conrad, the trustee and vendor of the land through the auctioneer, could not be, and therefore was not the agent of the vendee of the land, authorized by him to sign said memorandum. I deem it unnecessary to consider either of these objections to the mode of proving this contract. For as we shall presently see, Holt, the vendee, by his counsel in this case, clearly waives all the benefits of the statute of

1877.
Special Term.

Fleming, adm'r,
v.
Holt et al.

frauds before quoted.    Had it not been so waived, these questions would have, I think, presented a very serious difficulty in the way of the plaintiffs enforcing this contract.    I have not looked at the authorities on these points. my first impression is that the memorandum is probably sufficiently definite ; but that it is most probable that the signature thereof by the trustee, Conrad, he being the vendor, did not bind Holt, the purchaser ; but on neither of these points do I mean to express any opinion, as I consider that they can not now be raised by the purchaser, Holt.    The bill distinctly and positively alleges that the trustee, Conrad, being called upon by the *cestui que trust,* Linn's administrator, to sell the property conveyed by the deed of trust, after advertising the property in the manner required by the deed of trust, did on the 2d day of April 1867 offer the said property for sale, describing it minutely ; that at said sale John W. F. Holt, being the highest bidder at the price of $1,555.00 cash, became the purchaser thereof.    And that he subsequently refused to comply with the terms of sale.    The Code of W. Va. chapter 125, section 36, Syllabus 9. provides, that " every material allegation of the bill, not controverted by an answer, shall for the purposes of the suit be taken as true, and no proof thereof shall be required."    None of these allegations are in any manner denied in the answer.    On the contrary, so far as they are noticed at all, they are expressly admitted.    All these facts then must, for the purpose of this suit, be regarded as admitted by the defendant, Holt.    In other words, he admits the making of a contract by him with Conrad, the trustee, to purchase certain real estate, minutely and accurately described, on April 2, 1867, for the price of $1,555.00 cash.    And in his answer, the defendant, Holt, entirely fails to rely upon the statute of frauds as a defense.    And his admission of the terms of the contract set forth minutely and accurately in the bill, and his failure to rely upon the statute of frauds, it is well settled, is a waiver of the benefits of this statute,

1877.
Special Term.

Fleming, adm'r,
v.
Holt *et al.*

Syllabus 8.

and relieves the plaintiff, from any obligation to prove the contract to have been in writing, or to prove it in any manner. Where an answer admits an agreement for the sale or purchase of lands, though but a parol one, the defendant must plead this statute, or the answer must claim the benefit of this statute, in order that the defendant may avail himself of it; otherwise he is taken to have admitted an agreement, which is either good under the statute, or on ome other ground is binding on him. See *Spurrier* v. *Fitzgerrald*, 6 Ves. 548; *Harris* v. *Knickerbocker*, 5 Wend. 638; *Talbot* v. *Bowen*, 1 A. K. Mar. 325; and it is immaterial whether the admission be directly by the answer, or by permitting the bill to be taken for confessed, or by failure to deny the agreement alleged in the bill, which under our statute is then taken to be true: *Newton* v. *Swanzey*, 8 N. H. 9.

Syllabus 10.

It is true that in Holt's answer he does say : "he denies every allegation, and every inducement leading to that issue, whereby the respondent is charged with the purchase of the property sold under the deed of trust aforesaid subject to any, and all other liens thereon." He then states afterwards, that "finding the trustee crying the mill property at the price of $1,550.00, or thereabouts, and being bantered to make a bid, he did bid the sum of $1,555.00, as near as he can now remember." And he afterwards says, that after that, "when he came to the front door of the court house, the trustee had knocked it down to the respondent." There is no allegation, that the property so knocked down is not accurately described in the bill; and I regard these admissions, in view of the distinct allegation in the bill, as a full admission of the fact, that the contract was made by him, as stated in the bill, for the purchase of land named in the bill. Under our rule of pleading, the denial by him above quoted, is not a denial of any fact stated in the bill, but only a denial of the legal conclusion, that "the respondent should be charged with the purchase of the property sold under the deed of trust, subject to

1877.
Special Term.

Fleming, adm'r,
v.
Holt et al.

any and all other liens existing thereon." It is true that he says he denies "all allegations leading to this issue," by which I suppose he means "conclusion." It is evident he does not regard the allegation that "he bid $1,555.00 on the property; that he was the highest bidder; and that it was knocked down to him at that price," as allegations leading to this "issue" or conclusion as these facts are admitted. Such a general and loose statement in an answer, is not such a denial in an answer as puts the plaintiff on the proof of any facts distinctly and positively alleged in the bill, any more than such a loose statement in the bill, though not denied by the answer, would be regarded as admitted. The admission in the answer of the contract for the sale of land stated in the bill, which amounts to a waiver of all benefit of the statute of frauds, unless it is specially relied upon in the answer, or by plea, is the admission of the mere fact that the contract was made by the respondent; and though this admission be accompanied by statements of fact intended and tending to show, that the contract ought not under the circumstances to be enforced, it will not prevent such admission from being a waiver of all benefit of the statute of frauds. Nor will a denial of the justice of the contract or an allegation, that it would be a fraud to insist upon the performance of the contract by the defendant, in any manner prevent his admission of the fact, that he made the contract, from operating as dispensing with any proof of the contracts being in writing. Thus in *Talbot* v. *Bowen*, 1 A. K. Mar. p. 325, the suit was brought to enforce a contract for the purchase of land made by Featherstone with the son and agent of Talbot. Talbot in his answer admitted the purchase by Featherstone of his (Talbot's) son. But he denied his son's authority to sell the land, and insisted that if he was authorized, on account of the infancy of his son, and the inadequacy of the consideration, the contract ought not to be specifically enforced. He did not claim in his answer the benefit of the statute of frauds. There

was no proof that the contract for the sale was in writing or that any memorandum thereof was signed either by Talbot or his son. But it was proven that he had gave his son verbal authority to sell the land. The court held that the answer must be held as admitting the contract of sale and waiving all benefit of the statute of frauds and perjuries. We must therefore consider, as the only question before us for decision, whether the facts alleged in the answer and proved by the evidence, entitled the defendant to insist that this admitted contract ought not to be specifically enforced, because of the circumstances attending it, and the hardship of enforcing such a contract against Holt. This was the issue presented by Holt in his answer, and relied on by him in the circuit court.

Syllabus 7.

In considering this question, we must bear in mind that a purchaser at a public sale of land, made by a trustee, must look to the title of the grantor of the land; and he is entitled only to a deed with special warranty of title. He cannot look to the trustee for a good title, for in making the sale he is but an agent; he cannot look to the creditor, for he sells nothing, and is merely to receive the proceeds of the sale. To such a sale the principle of *caveat emptor* applies. See *Peterman* v. *Laws*, 6 Leigh 529; *Saunders* v. *Pate*, 4 Rand. 8; *Sutton* v. *Sutton*, 7 Gratt. 237; *Finley* v. *Toncray*, 2 Rob. 374; Rowles on Covenants p. 418; *Goddin* v. *Vaughn*, 14 Gratt. 117. The evidence shows that Holt, the purchaser at the sale, was then and had been for a considerable time sheriff of Gilmer county; that he well knew long before the sale, that this mill property was encumbered, he himself having been interested to the amount of $250.00 in one of the liens on this property, for eighteen months prior to the sale; that for several weeks before the sale he contemplated being a bidder for the property at the sale; that he conversed then with the *cestui que trust* about the liens on said property; that this purpose of being a bidder at the sale he made known to his son-in-law a few days before

the sale, and on the day of sale he authorized him to bid for the property for him, which he did. The land was sold at Gilmer court house; and the record books of that county show that there were of record in the clerk's office of the county court of that county, no less than sixteen liens by judgments and deeds of trust, which were prior liens to the deed of trust, under which this mill property was sold, and which aggregated the sum of $6,570.00. The record does not show 'what portion of these liens were in force, nor enable us to form any idea of what amount had been paid on them, though it is obvious that a very large portion of this indebtedness must have been paid, as more than one bidder with, I presume, some knowledge of the probable amount really due on these prior liens, bid probably within less than $2,000.00 of the value of this mill property. On the day of sale the trustee, Conrad, who cried the property, announced before the sale commenced, that it was sold subject to all prior liens; and during the crying of the sale, at the suggestion of the *cestui que trust*, he again made this announcement publicly. The son-in-law of Holt, at his request, run the property up to $1,550.00, that being Mr. Wyatt's bid, he then went into the court house and saw the sheriff, Holt, for whom he was bidding, told him how the bidding stood; he having bid it up to the limit fixed by Holt. He said he would come out and see about it himself; and he did come out and bid $1,555.00. The bidding after the property reached $1,500.00, was very slow and no bid was made, after Holt's bid of $1,555.00. There being a discussion going on about the prior liens, on the property, subject to which the mill property was being sold, a lawyer who was present, and who had in other matters been counsel for Holt, suggested to him after he had bid $1,555.00, that he had better examine about these liens, before he proceeded further with. his biddings. He thereupon requested him to do so. He went to the clerk's office to do so, and a number of persons went along. In a few minutes he found numerous prior

liens on the property, and told Holt that no prudent man would purchase the property. He does not say what was Holt's reply; but Holt says he told him he would have nothing to do with the property; and that he went out and found that the trustee, Conrad, had knocked the property down to him at his bid of $1,555.00. He says he stated in the recorder's office a few minutes afterwards, that he would not stand to his bid; but he does not say he told the trustee and crier so, and no one else speaks of having heard him so say. In truth, his statements are not corroborated generally, but are contradicted. He says: In a conversation with Ben. Covert, I heard him say, that he had the mill property about paid off; and in a conversation with C. B. Conrad, he expressed the opinion, that the property was about free from incumbrance, except Linn's deed of trust.

Covert's deposition was taken, and he is not asked, whether he made such a statement to Holt. He (Holt) says, positively that he had no idea of purchasing the property at the sale to be made, under this deed of trust. In this he is contradicted positively by both Mr. Fleming, and his own son-in-law, both of whom he had told days before the sale, that he meant to bid for it. He represents himself, as casually stepping to the door, and being bantered to make a bid he made one; he denies, that he had spoken to his son-in-law, to bid for him; but his son-in-law contradicts him in this, and says he made several bids for him, and consulted with him while the bidding was going on. He represents, that some one, after he made his last bid, said there were other liens on it; and he thereupon asked his attorney to examine and see, if there were any prior liens, intending to produce the impression apparently, that he knew nothing of any prior liens till after his last bid, when the proof shows, that he had a conversation with Mr. Fleming, some three weeks before, in relation to these prior liens, announcing then his purpose of purchasing the property at the sale. He seems to wish by his mode of stating this request to

1877.
Special Term.
Fleming, adm'r,
v.
Holt et al.

his attorney and its effect to produce the impression, that it was a great surprise to those present. He says he made this request in a language and tone, that all heard; and the bidders generally followed him and his attorney into the clerk's office, and yet it is proven, that the trustee Conrad, had on several occasions announced publicly the existence of such prior liens; and that the property was being sold subject to them. In his answer he says: that he told the complainant and the trustee, as soon as he found, that in his absence in the clerk's office, the mill property had been knocked down to him, that he would not recognize the sale, and refused to make any payment. But this statement he does not repeat in his deposition; but says he told his counsel so in the clerk's office, but his counsel, in his deposition does not even corroborate this. The trustee and *cestui que trust* prove, that he made no objection to the sale till several days afterwards; and three witnesses prove that on the evening of the day of sale he told a tenant, who was in possession of the property, that he had bought it, and wanted to know when he could get possession of it, that he had to leave home, but in two weeks would be back, when he would be ready to take charge of it, asking the tenant to remain in it till then for him. He proposed to the tenant, to take him in as a partner in the mill, or sell him half of the property; or if that did not suit, he would make other arrangements when he returned home. The next day he saw this tenant, and told him he would have to get the saw mill covered. After the sale he sent his son-in-law to Braxton county, to ascertain from a party living there the amount due on his lien, which was a prior deed of trust, and found that there were some small credits on it, one of $75.00. It is difficult to tell the value of this property; it depreciated after this sale, and excluding a saw mill worth about $125.00, it was sold some time afterwards at $1,800.00 or $1,900.00. After this second sale under a prior lien and purchase, Holt sold one-half of the property for $2,200.00; but doubt-

less got a big price for it; taking pay in other property in part and on long credit. The conclusion fairly to be drawn is, that Holt at the time he made this purchase knew perfectly well that it was being sold subject to all prior liens; that for some weeks prior to the sale he made up his mind to bid for this property; that he himself held one of those prior liens, and the existence of fifteen others was shown by the clerk's office of Gilmer county of which he was the sheriff; that many of these liens being small judgments had probably been in his own hands, and he knew of them; that he probably had, when this sale was made, as accurate a knowledge of these previous liens, as any one else, and certainly as good an opportunity of ascertaining them as any one else; that the property was not knocked down to him hastily, while he was making investigations; but only after it was ascertained no other bid could be got; that he had no desire to retract his bid, and never thought of so doing, till days afterwards, when he did so, either because he thought he had made a bad bargain, regarding the mills as worth less than he had estimated them, or possibly finding out that he was mistaken in his estimate of the amount due on one lien, though of this last, the record furnished no satisfactory evidence. Upon such state of facts we see no reason why he should not be compelled to perform specifically his contract. It was his duty, if he intended to bid on the property, to ascertain the amount of liens, as he knew it was to be sold subject to these prior liens; and it is fair to presume that he did so. He has not shown that he was led into any mistake, as to the amount of these liens, by the trustee or *cestui que trust*, or by any party who held such liens; or indeed that he was under any misapprehension as to their amount; and if he had been under such misapprehension, produced by no one interested in the sale, he should at least have shown the use of due diligence to acquire correct information, which he does not pretend to show. There is therefore no reason why he should not

be compelled to pay the purchase money, due from him by his contract, on receiving the deed to which he is entitled.

It is also claimed by the appellant, that the decree was for a larger sum, than the amount due from Holt by his contract. It was for the aggregate amount of principal and interest due from him up to the date of the decree, with interest on this entire amount from the date of the decree till paid.

It is insisted that the interest from the time of the rendition of the decree instead of being on this aggregate amount, $2,219.50, should have been on the amount only of his bid, $1,555.00. This decree was in this respect, rendered in accordance with the 16th section of chapter 131 of the Code of West Virginia; but it is insisted that this section is unconstitutional, being a violation of section 10 of article one of the Constitution of the United States, forbidding any State to pass any law impairing the obligation of contracts. And *Green* v. *Biddle*, 8 Wheat. 1, is referred to as showing, "that an objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it." But this law does not effect in the slighest degree any change in the contract of the parties. The decree or judgment rendered under this law is for the exact amount due by the contract; and the law simply allows not for a failure to comply with the contract, but for the failure to obey the judgment or decree of the court—six per cent. on the amount of such judgment, which includes both principal and interest then due. This is a just, and but a just compensation to the plaintiff for the loss he sustains by the delay of the defendant in complying with the decree of the court. If the defendant did, as he is required by the decree, pay the amount he is ordered to the plaintiff at once, he would only pay exactly the amount, his contract requires him to pay. And it is no change of his contract, or violation of this

provision of the Constitution of the United States for the law to require him, if he fails to do his duty and obey at once the order of the court, to pay to the plaintiff such further amount, as is a just compensation to the plaintiff for his loss arising from his, the defendant's delay to do his duty.

Syllabus 3.    It is further insisted that this amount due from the defendant, Holt, ought not to have been decreed to be paid to the plaintiff, as there had been in the suit no ascertainment, that there was this much due on the debts of the plaintiff secured by the deed of trust.   It was entirely immaterial to the appellant, Holt, to whom he was ordered to pay the amount due from him, whether to the plaintiff, to Conrad, the trustee, or to Webb, the grantor in the deed.   Webb is the only party who could complain of this amount being ordered to be paid to the plaintiff.   And in this case he cannot complain thereof, because the bill claimed that there was more than this amount due on the debts secured by Webb's deed of trust.   And Webb confessed this by filing no answer, and letting the bill be taken for confessed as to him.   If he had filed an answer disputing that the whole amount of the purchase money was properly coming to the plaintiff on his debts, the court would have ascertained the true amount of the plaintiff's debts secured by the deed of trust of Webb; and decreed this to be paid to him, and the residue to be paid to Webb.   Such a decree against the defendant, Holt, in favor of the defendant, Webb, the court had a right to render.   The law in such case is, that a decree between co-defendants can only be based upon pleadings and proofs between the complainant and the plaintiff.   If Webb had by his answer, controverted this position of the plaintiff's bill, and shown that the debt due from him to the plaintiff under the deed of trust, was less than the purchase money due from Holt, then upon the above authorities, the court might, and ought to have rendered a decree between the co-defendants, and or-

dered Holt to pay to Webb so much of the purchase money, as appeared to have been properly coming to him.

The decree of the circuit court of Gilmer county of May 22, 1874, must therefore be affirmed, and the appellees must recover of the appellant their costs about this appeal in this Court expended, and damages according to law.

JUDGES MOORE and JOHNSON concurred.

DECREE AFFIRMED.