## CHARLES TOWN.

### Dunlap *v.* Hedges.

Submitted September 4, 1891.—Decided September 10, 1891.

Receiver—Waste by Mortgageor.

> W. sold and conveyed a tract of land to H., and took a deed of trust to secure certain notes given for the purchase-money. After a portion of said notes were paid, a second deed of trust was given on the same property to secure the notes remaining unpaid. Default was made in the payment of one of these notes, and the trustee was requested to sell under said last-named deed of trust which he proceeded to do by advertising the same, and during the pendency of said advertisement H. confessed a judgment to his father for something over eight thousand dollars, which judgment was docketed.   On the day of sale his said father was present and publicly announced through his attorney, that his said judgment was a lien upon said property and entitled to priority; and when in the afternoon of that day said trustee proceeded to sell said property, the same was bid off by the father of said H. for the sum of four thousand and nine hundred dollars, but he failed to comply with the terms of sale by paying the purchase-money, claiming that he was entitled to it by virtue of said judgment.   Upon a bill filed by the trustee setting forth these facts, and alleging that H. was insolvent, and had been allowing said farm to run down, and was cultivating said land in a wasteful and destructive manner, supported by affidavits, a proper case was presented for the appointment of a special receiver, to take charge of said land, to rent and preserve the same until the conflicting claims asserted could be adjusted.

*J. B. Sommerville* for appellant cited High Rec. § 10; 2 Bar. Ch'y Pr. § 144; Code (1887) c. 89; *Id.* c. 50; 15 W. Va. 444; Code (1887) c. 135, s. 1, par. 7; 27 W. Va. 428.

. *Erskine & Allison* for appellee cited 16 Ill. 141; 2 Par. Con. 677-679; 1 Ben. Sales § 335 *et seq.;* Chitt. Con. (5th Ed.)

742; 2 Dan. Ch'y Pr. 1280; 15 Gratt. 288; 2 Min. Inst. 334 (287); High Rec. § 11; 1 Tuck. Comm. 103–106.

ENGLISH, JUDGE:

On the 24th day of May, 1890, William M. Dunlap, trustee, by leave of the court, filed in the Circuit Court of Ohio county, in open court, his bill of complaint, verified by affidavit, against Burton Hedges and Ellen Hedges, his wife, C. B. Hedges, the McCormick Harvesting Machine Company, and Robert B. Wayt, together with certain exhibits, accompanied with proof of service of the notices upon the defendants Burton Hedges and C. B. Hedges as to the time of filing said bill, and that the appointment of a special receiver would be applied for as soon as the application could be heard for the purposes prayed for in the bill. The defendants upon whom said notice was served appeared by counsel, and the hearing of said application was fixed for Monday, May 26, 1890.

The plaintiff in said bill alleged, among other things, that on the 4th day of December, 1883, said Robert B. Wayt sold, and he and his wife conveyed, to said Burton Hedges, a farm in Ohio county, containing one hundred and seventy 39-100 acres; that on the same day said Burton Hedges and wife executed a deed of trust on said premises to secure the purchase-money thereof, evidenced by nine promissory notes of the said Burton Hedges, all bearing date on the 4th day of December, 1883, and payable to the order of the defendant Robert B. Wayt, the first eight of which notes were for the sum of eight hundred dollars each, and were payable, respectively, with interest from date, in one, two, three, four, five, six, seven and eight years from date thereof. The ninth note was for the sum of eight hundred and twenty three dollars, and forty cents, payable, with interest, nine years from the said date, which deed of trust was duly admitted to record; that some time after making said deed of trust it was discovered that the same was defective, by reason of the omission of an attesting clause at the conclusion thereof, and to remedy said defect a new deed of trust was executed by the same grantors to J. S. Cochran, trustee, upon the same property, dated April 13, 1885, to secure

said notes, which last-named deed of trust showed on its face that it was executed for the purpose of correcting said mistake, and that it was to stand in lieu of said former defective deed of trust, which last-named deed of trust was duly recorded; that on the 12th day of January, 1889, three of said promissory notes that had become due had been paid, and a fourth was subject to a credit of four hundred and forty seven dollars as of the 22d day of December, 1886, and a further credit of forty seven dollars and seventy five cents as of September 15, 1888; that another of said notes which had become due was held in a bank in Wheeling, and in order to give the note which was in bank and the note which was partly paid a preference in the order of priority, and because the said J. S. Cochran, trustee in the two deeds of trust aforesaid, had removed from the state of West Virginia, a new deed of trust was made and executed by said Burton Hedges and wife to the plaintiff, William M. Dunlap, as trustee, dated on the 12th day of January, 1889, conveying the same property, with the exception of three parcels thereof, containing about eleven acres in all, which had been sold and conveyed by said Burton Hedges and wife to other persons; which last-mentioned deed of trust was to secure the last five of the notes above described and the unpaid portion of another of said notes, but was so drawn as to give the preference first to the note held in bank, then the preference to the note which was partly paid, and, as to the four notes which were last to become due, they were placed on an equality with each other; and it was provided that said last-named trust-deed, when properly signed, acknowledged and admitted to record, was intended to take the place of a deed of trust made by Burton Hedges and wife to J. S. Cochran, trustee, dated April 3, 1883; that it was the agreement of parties and intention of the grantors that said deed of trust to him should, when so executed and recorded, take the place of said deed of trust dated April 3, 1885, and that the date April 3, 1883, was written in said deed of trust by mistake, instead of April 3, 1885—that said deed of trust to plaintiff as trustee, dated January 12, 1889, was duly executed and acknowledged, and was duly admitted to record on the 28th

day of January, 1889—that after the making of said last-mentioned trust-deed, the two notes which were given the preference therein were paid, and when the next of said promissory notes became due, to wit, on December 4, 1889, it was not paid; that afterwards the plaintiff, having been requested by the defendant Robert B. Wayt, the holder of said note, to proceed to collect the same by means of a sale of the property under said deed of trust, advertised the same for sale on the 8th of April, 1890';—that after the commencement of the publication of said advertisement, to wit, on the 15th day of March, 1890, the defendant Burton Hedges confessed a judgment in favor of his father, C. B. Hedges, for the sum of eight thousand, three hundred and thirty seven dollars and eighty six cents with interest thereon from the 15th day of March, 1890, until payment, which judgment was docketed the 8th of April, 1890, and was predicated upon a promissory note of said Burton Hedges dated January 7, 1890, for the sum of eight thousand, two hundred and forty eight dollars and fifty cents payable one day after date, to the order of C. B. Hedges; and that on the 6th day of December, 1889, the defendant the McCormick Harvesting Machine Company obtained a judgment against the said Burton Hedges before a justice for the sum of fifty three dollars and seventy five cents and costs, five dollars and thirty cents, which judgment was docketed on the 6th day of December, 1889; that on the 8th of April, 1890, before the commencement of the sale, the said Robert B. Wayt executed, acknowledged, and filed for record in the county clerk's office of said county two deeds of release, releasing said two first-mentioned deeds of trust, and on the same day said property was offered for sale at auction in pursuance of said advertisement—that soon after the beginning of the auction J. B. Sommerville, an attorney at law practicing at that bar, publicly announced to the persons in attendance at said sale that there was a judgment of about nine thousand dollars which was a lien upon the property, and he claimed that it was the first lien upon the property, and that he desired to give notice of the fact so that purchasers might not get into trouble—that he did not announce who his client, the judgment creditor, was, but he

afterwards informed the plaintiff that he referred to the said judgment in favor of C. B. Hedges for the sum of eight thousand, three hundred and thirty seven dollars and eighty six cents; that the plaintiff, believing his trust-deed was the first lien, continued to receive bids for the farm, the sale was continued until the afternoon of the same day, when the defendant C. B. Hedges appeared as a bidder, and, being the highest bidder, became the purchaser at the price of four thousand, nine hundred dollars, but failed to comply with the terms of sale by paying any portion of the purchase money, but claimed, through his attorney, that he was entitled to the first lien on the property, and that none of the purchase money was payable to the plaintiff as trustee, except so much as would pay the expenses of advertising and making said sale; that the defendant Burton Hedges is still occupying and using said farm, which at the time it was sold to him, in 1883, was in good condition and repair; but that he has suffered it to go down, the buildings and fences have been neglected, and his manner of cultivating said land has been very wasteful and destructive, so that the fields have been badly washed and otherwise injured;—that said Burton Hedges has no more personal property than he could successfully claim as exempt from execution;—that the price for which the said farm was sold at said auction to said C. B. Hedges is sufficient to pay the debt secured by said deed of trust, but that if the said farm is allowed to remain in the charge of said Burton Hedges, and he is allowed to have the profits from it, and to continue the destructive use of it, it will, as he believes, soon become of too little value to be safe security for the said debt, considering it the first lien;—that there is no reasonable ground for considering said judgment as prior or superior to the lien of said deed of trust under which said sale was made;—that the assertion of said claim casts a cloud upon the title to said land, and by further claim that said purchase-money need not be paid the said C. B. Hedges and Burton Hedges will be able, unless prevented by the order of the court, to deprive the said Robert B. Wayt, the *cestui que trust* under said deed of trust, of the money, or a large portion of the money, owing to him from said Bur-

ton Hedges, and secured by said deed of trust;—that if he should treat the said purchaser, C. B. Hedges, as having forfeited his rights as a purchaser by reason of his non-compliance with the terms of said sale, and should again advertise the property for sale, the said Robert B. Wayt would be injured and deprived of his rights by the continuance of the said Burton Hedges in the possession of the property for an indefinite length of time, because the said claim that the lien of the said judgment in favor of C. B. Hedges is superior to that of said deed of trust would still be asserted, and so the title would be clouded, and a fair and reasonable sale would be prevented.

The plaintiff charges that the said claim of Robert B. Wayt for the amount of said last four notes constitutes the first lien on said property; the said judgment of the McCormick Harvesting Machine Company for fifty three dollars and seventy five cents, with interest and costs, constitutes the second lien on said property; and the said judgment of C. B. Hedges for eight thousand three hundred and thirty seven dollars and eighty six cents, with interest and costs, if it be a valid lien at all, is the third and last lien thereon; and he prayed that a special receiver might be appointed to take charge of the said property, to care for, rent out, and protect the same, and to collect, receive, and preserve the rents and profits thereof until said property should be sold by order of the court;—that the claim and pretension of the said C. B. Hedges, in regard to the superiority of the lien of his said judgment, might be considered and determined; and that the said C. B. Hedges, his agents and attorneys, might be perpetually enjoined from setting up the said claim in any way to the injury of the plaintiff as trustee, or of his *cestui que trust*, the said Robert B. Wayt; and that if the said property should, at any sale which might thereafter be made by order of the court, not bring enough money to pay in full the claim of R. B. Wayt, with the interest thereon, a decree might be entered requiring the said C. B. Hedges to pay the deficiency.

This bill was verified by affidavit, and neither of the defendants ever tendered or filed an answer denying its allegations.

On the 30th day of May, 1890, the plaintiff moved the court, after giving notice, for the appointment of a receiver, and supported his motion by affidavits, which were replied to by counter affidavits; and, after taking time to consider, the court, on the 24th day of June, 1890, appointed William J. W. Cowden special receiver, who was required, after giving bond in the penalty of three thousand dollars, conditioned for the faithful performance of his duties, to take charge of the farm described in said deed of trust, and to rent out the same for a period ending April 1, 1891, upon the terms therein set forth, and directing said Burton Hedges to deliver possession of said property to said receiver; and from this decree the defendant C. B. Hedges applied for and obtained this appeal.

The first error assigned and relied upon by the appellant, C. B. Hedges, is that the plaintiff's bill, and the affidavits of appellant and Burton Hedges, filed in said cause, show that the plaintiff sold the real estate mentioned and described in the bill and exhibits in said cause to appellant on the 8th day of April, 1890, and that at or shortly after said date appellant took possession of said real estate, and leased the same to said Burton Hedges, who was occupying the same under said lease when said receiver was appointed, thus leaving nothing for said plaintiff to do but to collect the purchase-money for the real estate.

It is true the plaintiff, as trustee, on the 8th day of April, 1890, sold said land at public auction to the appellant; but it is also true that, but for the failure and refusal of the appellant to comply with the terms of the sale by paying the purchase-money, and by the assertion on his part of a claim that his judgment-lien was entitled to priority over the trust lien under which said sale was made and under which he purchased, the intervention of a receiver would not have been necessary, and his appointment would not have been assigned as error by the appellant.

The facts set forth by the plaintiff in his bill, and which are not controverted by any answer, seem to me to present a case which peculiarly calls for the appointment of a receiver. In the case of *Beverley* v. *Brooke*, 4 Gratt. 208, Judge Baldwin, in delivering the opinion of the court, discusses

elaborately the appointment, powers and duties of receivers.
He says : " By means of the appointment of a receiver, a
court of equity takes possession of the property which is
the subject of the suit, preserves it from waste or destruc-
tion, secures and collects the proceeds or profits, and ulti-
mately disposes of them according to the rights and priorities
of those entitled.  *  *  *  The receiver appointed is the
officer and representative of the court, subject to its orders,
accountable in such manner and to such persons as the
court may direct, and having in its character of receiver no
personal interest but that arising out of his responsibility
for the correct and faithful discharge of his duties.  *  *  *
The order of appointment is in the nature, not of an attach-
ment, but a sequestration ; it gives in itself no advantage
to the party applying for it over other claimants, and oper-
ates prospectively upon rents and profits which may come
to the hands of the receiver as a lien in favor of those in-
terested, according to their rights and priorities in or to the
principal subject out of which those rents and profits
issue."

Barton, in his Chancery Practice (volume 1, p. 480)
says :  " The object of the appointment of a receiver is to
preserve the *status* of the property until there can be an
adjudication of conflicting claims to or interest in it ;" and
on page 482 he says : " The immediate moving cause for
the appointment of a receiver is that the subject of litiga-
tion may be preserved from waste, loss or destruction, so
that there may be some harvest, some fruits to gather, after
the labors of the controversy are over."

In the case under consideration, the appellant, by claim-
ing to be entitled to the entire proceeds of said sale by
reason of his judgment, created the controversy in refer-
ence to the priorities of the lienholders, and necessitated
the action of the court of which he complains.  In the
case of *Fleming* v. *Holt*, 12 W. Va. 143, point 4 of the syl-
labus, the Court held that such a suit (meaning a suit in
equity for specific performance) may be brought against the
purchaser of land sold at public auction by the trustee, on
the refusal of the purchaser to comply with the terms of
sale, without the trustee selling the land again at auction,

and, if the trustee made a second sale, no such suit would lie against the first purchaser.

The object of the bill filed in this case by said trustee was the appointment of a receiver to take charge of said property, and to rent and receive the rents, and preserve the same until the property could be properly sold by the order of the court, and until the claim of said C. B. Hedges in regard to the superiority of the lien of his said judgment could be heard and determined. By asserting that claim, the said C. B. Hedges proclaimed to those present at the sale the existence of a controversy between the owners of said respective liens; and as men, as a general rule, are averse to purchasing litigation, said claim had a tendency to deter others from bidding, and thereby to prevent the property from bringing what it would under different circumstances; and, although it may be said that those wishing to purchase had the opportunity of resorting to the records and making the examination for themselves as to the validity and priority of said trusts and judgment-liens, yet, if the time had been allowed for such an examition in this instance, the records would have disclosed that the trust-lien was the oldest in point of time, and apparently entitled to the priority, and the party would have been left to conjecture and uncertainity as to the grounds upon which the claim of priority was asserted by said C. B. Hedges—all of which would have a tendency to depress the price, and deter bidders.

In the disposition of property at public auction, equity always discountenances anything that has a tendency to prevent a fair sale, and will not, as a general rule, allow a purchaser to obtain the title to property for less than its value by resorting to unfair means or representations; but, as the property at this sale appears to have brought a sufficient amount to pay off and discharge said trust-lien which said trustee claims is entited to priority, he does not formally ask in his bill that said sale may be treated as a nullity, or that the same may be rescinded, but, without praying a specific execution of a contract between himself and C. B. Hedges as purchaser at said sale, he merely asks that a special receiver be appointed to care for the property

and collect the rents until the priority of the liens can be determined, and until the property shall be sold by order of the court.

Said trustee was proceeding, in pursuance of the request of his *cestui que trust*, to make sale of the said real estate under said trust-deed as the property of Burton Hedges, and, when it was knocked off to C. B. Hedges at a sum sufficient to pay off and discharge said trust debt, the said purchaser claimed that he was entitled to the entire purchase-money, and refused for that reason to comply with the terms of the sale.

Under these circumstances, it is manifest that the trustee still retained the legal title to the land described in said trust, and has not in any manner released said trust-lien, but still had the right to look to the land of said Burton Hedges for satisfaction of the debt secured in said deed of trust. This being the case, and it having been alleged that said Burton Hedges is the owner of no property that can be reached and subjected by execution, which allegation is not contradicted either by answer or affidavit filed in the cause, and it being further shown by the allegations of the bill, supported by affidavits, that said Burton Hedges was suffering said real estate to deteriorate in value by allowing the fences to go down, and that his manner of cultivating the same was wasteful and destructive, a case is presented which would authorize the appointment of a receiver to take charge of the property, and to rent the same, and receive the rents, until such time as the priorities of the liens asserted could be ascertained and determined.

The duty of the trustee, under these circumstances, is plainly defined in 2 Minor, Inst. p. 286, as follows : "It is the trustee's duty to forbear to sell, and to ask the aid and instructions of a court of equity, in all cases where the amount of the debt is unliquidated or in good faith disputed, where any cloud rests upon the title, where a reasonable price can not be obtained, or where, for any reason, a sale is likely to be accompanied by a sacrifice of the property, which, at the cost of some delay, may be obviated." *Bryan v. Stump*, 8 Gratt. 247.

It may be true that the defendant C. B. Hedges is worth

as he alleges, five or six times the amount of the plaintiff's claim; but he denies that he is liable for any portion of the purchase-money, or that said trustee is entitled to receive any portion of the amount he bid for said property, because, as he asserts, he is entitled to the amount by reason of his judgment; thus raising a question as to the priority of the liens as aforesaid, the determination of which question is peculiarly within the province of a court of equity; and during the delay occasioned by the determination of this question it was the plain duty of the court, under the circumstances of the case, to appoint a receiver to take charge of the property, to rent the same, and receive the rents, as provided in said decree complained of.

For these reasons we are of opinion that the court below committed no error in the appointment of the receiver with the powers and authority conferred upon him by the decree complained of; and said decree must be affirmed, with costs.

AFFIRMED.